UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

G.M. McCROSSIN, INC.,

    Plaintiff,

v.                              CIVIL ACTION NO. 5:17-cv-03953

CITY OF RONCEVERTE, WEST VIRGINIA,

    Defendant,

v.

G.M. McCROSSIN, INC.,

    Third-Party Plaintiff,

v.

FERRO PRODUCTS CORPORATION,

    Third-Party Defendant,

v.

GOLDEN RAILINGS, INC., et al.,

    Fourth-Party Defendants.

### MEMORANDUM OPINION AND ORDER

Pending is Plaintiff G.M. McCrossin, Inc.'s Motion to Enforce Settlement Agreement [Doc. 129]. On November 9, 2020, the parties appeared for an evidentiary hearing.

At adjournment, the Court directed the parties to submit proposed findings of fact and conclusions of law, which they timely did on December 21, 2020 [Docs. 143, 144]. The matter is ready for adjudication.

**I.**

This action involves a contract dispute between G.M. McCrossin, Inc. ("GMM") and Ronceverte, a West Virginia municipality ("the City"). On August 18, 2015, GMM was

retained to construct a wastewater treatment plant for the City. The plans were prepared by the City's expert engineer, John Carpenter, of Thrasher Group, Inc.

On September 8, 2017, GMM instituted this action alleging certain irregularities. [Doc. 1]. On July 15, 2019, the parties settled the dispute and entered into the subject Settlement Agreement. [Doc. 139-1]. Paragraph Two of the Settlement Agreement states as follows:

> Within five (5) business days after the Effective Date, GMM will, through its expert, present its scope of work and methodology to repair concrete cracking in the VLR and clarifier walls and incorrectly installed stair supports at the Project to the City and The Thrasher Group, Inc. ("Thrasher"), for review and approval. Following receipt of Thrasher's written approval, GMM shall begin and prosecute the agreed concrete repairs as soon as reasonably practical, but in no event more than forty-five (45) days after approval and shall thereafter diligently prosecute the repairs *to achieve final completion, as jointly determined by GMM's expert and Thrasher*. As a part of the repair plan, GMM shall also be responsible for tightening link seals at the Project site to stop them from continued leaking, correcting stair support anchor bolts, and shall use reasonable efforts to attempt to obtain cooperation from GMM's supplier, Evoqua, to assist the City in repairing the malfunctioning bearing currently present at the site.

[Doc. 139-1 at 2 (emphasis added)].

Paragraph Four of the Settlement Agreement states in pertinent part that "[t]he City shall be entitled to withhold up to $160,000 . . . until such time as *Thrasher certifies* that GMM has achieved final completion of the agreed repair work as outlined in paragraph 2 above." [Doc. 139-1 at 2–3 (emphasis added)]. Accordingly, the certification of final completion by Mr. Carpenter is a condition precedent of the City's $160,000 payment to GMM.

## II.

GMM contends that it has complied with Paragraph Two of the Settlement Agreement and is thus due $160,000 in accordance with Paragraph Four. GMM points to its Concrete Crack Repair Submittal provided to Mr. Carpenter for review. In Mr. Carpenter's

Submittal Review Comments, he instructed that "[t]he Contractor shall ensure the crack repairs are performed in strict accordance with the recommendations of BASF. **NO EXCEPTIONS TAKEN.**" [Doc. 139-2 at 1 (emphasis in original)]. Mr. Carpenter supplied his Submittal Review Comments to GMM and directed GMM to make the noted corrections in the Concrete Crack Repair Submittal and complete the repairs as contemplated.

When GMM reported to the City that it had completed the repairs to the plant, Mr. Carpenter conducted an inspection. On August 27, 2020, Mr. Carpenter filed his Thrasher Site Review Report, which states in pertinent part:

> The cracks in the VLR basins as well as the secondary clarifiers appear to be sealed, however I recommend continuing to monitor the tanks for cracks over the coming winter and spring seasons due to the expansion and contractions that will occur with the changes in the temperatures. *Additionally, the exterior finish of the tanks is unacceptable. I recommend McCrossin be required to paint a finish coating on the exterior of the tanks.*

[Doc. 139-3 at 1 (emphasis added)].

On September 4, 2020, upon receipt of Mr. Carpenter's report, GMM demanded full payment. On September 14, 2020, the City responded and refused to pay, relying on the italicized comments of Mr. Carpenter's report which deemed the exterior "unacceptable" and recommended painting a finishing coat and monitoring the tanks through the winter. [*Id.*].

### III.

First, the Court is obliged to assure itself of subject matter jurisdiction. Paragraph 6 of the Settlement Agreement and Release states as follows:

> **DISMISSAL OF THE LITIGATION**. Within ten (10) business days after final completion of the work as determined under paragraph 2 above, the Parties will cause their counsel to dismiss, with prejudice, all claims and counterclaims asserted against one another in the Litigation.

[Doc. 139-1 at 3 (emphasis added)]. Consistent with this provision, the Court did not contemplate dismissal until it directed, on September 3, 2020, that "proposed orders of dismissal . . . be presented on or before December 31, 2020." [Doc. 128 at 1]. The instant motion was filed prior to that December 31, 2020, deadline. The controversy thus reignited prior to dismissal. For that reason, the Court concludes that the circumstances working divestiture in *Kokkonen v. Guardian Life Insurance Co.*, 511 U.S. 375, 381–82 (1994), and similar cases are absent here. ("Although resolution of a motion to enforce a settlement agreement draws on standard contract principles, it may be accomplished within the context of the underlying litigation without the need for a new complaint. To this extent, district courts have inherent authority, deriving from their equity power, to enforce settlement agreements. *Hensley v. Alcon Labs., Inc.*, 277 F.3d 535, 540 (4th Cir. 2002) (citing *Millner v. Norfolk & W. Ry. Co.*, 643 F.2d 1005, 1009 (4th Cir. 1981)).

Second, the parameters of the analysis are well settled. In order to enforce a settlement, the undersigned "(1) must find that the parties reached a complete agreement and (2) must be able to determine its terms and conditions." *Hensley*, 277 F.3d at 540–41. The Court must first ascertain "the objectively manifested intentions of the parties" to determine whether there was a meeting of the minds. *Moore v. Beaufort Cnty.*, 936 F.2d 159, 162 (4th Cir. 1991). If "there is a factual dispute over the existence of an agreement, over the authority of attorneys to enter into the agreement, or over the agreement's terms, the district court may not enforce a settlement agreement *summarily*." *Hensley*, 277 F.3d at 541 (emphasis in original) (footnote omitted). In such a case, a plenary evidentiary hearing is required in order to resolve the dispute. *Id.* (quoting *Millner*, 643 F.2d at 1009). The parties admit that (1) they arrived at a complete agreement, and (2) the governing terms and conditions are ascertainable. Nevertheless, the dispute involves a serious

disagreement respecting satisfaction of those terms and conditions. An evidentiary hearing was thus required.

Third, and part and parcel with the required evidentiary hearing, is the accompanying legal framework to adjudicate the dispute. In recent years, our Court of Appeals has revisited the well-settled standards governing the interpretation and enforcement of a binding contract:

> Under West Virginia law, "the function of a court is to ascertain the intent of the parties as expressed in the language used by them" in their contract. *Zimmerer v. Romano*, 223 W.Va. 769, 679 S.E.2d 601, 610 (2009) (per curiam) (quoting *Davis v. Hardman*, 148 W.Va. 82, 133 S.E.2d 77, 81 (1963)). In doing so, courts must read contracts "as a whole, taking and considering all the parts together." *Id.* (citation omitted). Reading the contract as a whole, we must be mindful that "specific words or clauses . . . are not to be treated as meaningless, or to be discarded, if any reasonable meaning can be given them consistent with the whole contract." *Dunbar Fraternal Order of Police, Lodge No. 119 v. City of Dunbar*, 218 W.Va. 239, 624 S.E.2d 586, 591 (2005) (per curiam) (citation omitted).
>
> Generally, "[a] valid written instrument which expresses the intent of the parties in plain and unambiguous language ... will be applied and enforced according to such intent." *Arnold v. Palmer*, 224 W.Va. 495, 686 S.E.2d 725, 733 (2009) (brackets in original) (citations omitted). When a contract's terms are clear and unambiguous, "[e]xtrinsic evidence will not be admitted to explain or alter the terms of [the] contract." *Faith United Methodist Church & Cemetery of Terra Alta v. Morgan*, 231 W.Va. 423, 745 S.E.2d 461, 481 (2013) (citation omitted).
>
> On the other hand, where contract language is ambiguous, extrinsic evidence may be considered to aid the court in its construction of the contract. *Yoho v. Borg-Warner Chems.*, 185 W.Va. 265, 406 S.E.2d 696, 697 (1991) (per curiam). Language is ambiguous when it is "reasonably susceptible of two different meanings" or is "of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning." *Payne v. Weston*, 195 W.Va. 502, 466 S.E.2d 161, 166 (1995) (quoting *Shamblin v. Nationwide Mut. Ins. Co.*, 175 W.Va. 337, 332 S.E.2d 639, 642 (1985)).

*Equinor USA Onshore Properties Inc. v. Pine Res., LLC*, 917 F.3d 807, 813 (4th Cir. 2019). With these principles in mind, the Court now turns to the analysis.

## IV.

The applicable contractual language is crystal clear: it demonstrates that GMM has no basis to demand payment. Specifically, Paragraph Two of the Settlement Agreement required GMM to comply with the agreed-upon repair procedure. That procedure obligated GMM to strictly adhere to the BASF Technical Data Guide for MasterSeal 581. The parties stipulated that the repair procedure required use of BASF MasterSeal 500 and BASF MasterSeal 581. The BASF Technical Data Guide for MasterSeal 581 states as follows:

> Color Uniformity: With any cementitious product, such as MasterSeal 581, it may be difficult to achieve color uniformity due to weather and substrate variability. For this reason, it may be necessary to apply a topcoat of a MasterProtect architectural coating.

[Doc. 139-2 at 12].

The BASF guide unambiguously contemplates difficulty in achieving color uniformity and instructs that, in those cases, a topcoat might be necessary to achieve uniformity. Current photographs of the plant show an inconsistent, patchwork appearance following the repairs. [Doc. 139-3 at 4–6]. In fact, Mr. Carpenter stated that he had never seen a completed wastewater treatment plant look like the subject plant. [Doc. 140 at 34]. It does not appear that GMM disagrees with that assessment. When asked if GMM was proud of how the plant looks, its President, Mr. Robert Leahey, responded that the plant "look[ed] odd" and "should be painted." [Doc. 140 at 30].

Assuming, however, that the BASF topcoat guide requirement was somehow deemed inapplicable, it is nevertheless undisputed that Mr. Carpenter did not certify final completion and, accordingly, the Paragraph Four precondition is left unsatisfied. During the evidentiary hearing, Mr. Carpenter was specifically asked if he had certified GMM's final

completion of the repairs subject to the Settlement Agreement. Mr. Carpenter responded, "no." [Doc. 140 at 48]. When questioned if he was prepared to certify at the time of the hearing that GMM had achieved final completion, he again responded "no." [*Id*. at 40]. Moreover, GMM's expert has not certified final completion. [*Id.* at 26]. Inasmuch as neither party has certified final completion of the repairs, it is axiomatic that the City's payment of $160,000 to GMM is not mandated by the Settlement Agreement.

V.

Based upon the foregoing discussion, the Court **DENIES** GMM's Motion to Enforce Settlement Agreement [**Doc. 129**].

The Clerk is directed to send a copy of this written opinion and order to all counsel of record and any unrepresented parties.

ENTERED: September 13, 2021

*Frank W. Volk*
Frank W. Volk
United States District Judge